405 So.2d 521 (1981)
Walter FELDER
v.
GEORGIA PACIFIC CORP., Henry L. Turner, and Hartford Accident & Indemnity Co.
No. 81-C-0977.
Supreme Court of Louisiana.
September 28, 1981.
Rehearing Denied November 16, 1981.
*522 Joseph A. Gladney, & James R. Murray, of Joseph A. Gladney and Associates, Baton Rouge, for plaintiff-applicant.
Daniel R. Atkinson, of Owen, Richardson, Taylor, Mathews & Atkinson, Baton Rouge, for defendant-respondent.
CALOGERO, Justice.
We are presented with the question of whether a valid and enforceable compromise agreement has been entered into, where the claimant signed a "Release and Settlement of Claim" concerning his personal injury claim against the defendants, and the defendants in turn issued and mailed a draft to the claimant for the agreed upon sum.
On February 12, 1979, plaintiff, Walter Felder, was a passenger in a truck driven by Larry W. Severio. Plaintiff contends that he was injured when his vehicle was struck by a truck driven by Henry L. Turner. Turner was an employee of and driver of a truck owned by Georgia Pacific Corporation. Georgia Pacific and Turner are insured by Hartford Accident and Indemnity Company.
An adjuster for Hartford, William B. Petty, contacted plaintiff by telephone on June 25, 1979, about the accident. At that time, Petty obtained a statement from plaintiff concerning the accident and offered to meet plaintiff at his house later that evening to discuss the possibility of settling the case. Plaintiff agreed and Petty did in fact go out to plaintiff's house. Apparently after some discussion, Petty offered Felder $700.00 in settlement of all his claims against defendants and Felder verbally agreed. Thereupon, Petty filled out a release form which was titled "Release and Settlement of Claim". The form provided in part:
I Walter Felder ..., for the sole consideration of seven hundred dollars to me paid by or on behalf of Hartford Ind. Co., Georgia Pacific and Henry Turner the receipt whereof is hereby acknowledged, do hereby release, acquit and discharge said party or parties from all claims and demands, actions and causes of action ... resulting or to result from an occurrence that took place on or about the 12 day of February, 1979.
Felder signed the release. Petty also signed the form but did so under the notation "Witnesses".
The following day, June 26, 1979, another Hartford agent issued a draft to Felder for $700.00 and mailed it to him on that same day. Felder has never presented the draft for payment.
On January 18, 1980, Felder filed suit against Turner, Georgia Pacific and Hartford. Defendants filed a peremptory exception of res judicata on the ground that Felder had, on June 25, 1979, for the agreed upon consideration of $700.00, "signed and executed a release and settlement of all claims" against the named defendants arising out of the February 12th accident.
After a hearing on the exception, the trial court maintained the exception, finding that a valid and binding settlement had been made in the case and that plaintiff's suit was therefore barred. The Court of Appeal affirmed the lower court ruling. Felder v. Georgia Pacific Corp., et al., 393 So.2d 394 (La.App. 1st Cir. 1980).
*523 Our decision to grant writs in this case, 399 So.2d 619, was in part prompted by plaintiff's argument that the settlement is not enforceable because it was not signed by the defendants or their agent and, therefore, the settlement is not valid under La. C.C. art. 3071 which provides that a settlement "must be reduced into writing."
He contends that this requirement that the agreement be reduced to writing mandates that the writing must be signed by both parties. Therefore, since the adjuster Petty signed the agreement simply as a witness and not as an agent for and on behalf of Hartford as a party to the agreement, the agreement is invalid and unenforceable because not in compliance with the Code.
Initially, plaintiff's argument seemed persuasive. The Code requires that compromise agreements be in writing, by implication signed by both parties. This release or compromise agreement was only signed by the claimant. Thus, it appeared that defendants had created a situation where only the claimant was bound. And while defendants could reap the benefits of having the claimant bound by the agreement, they themselves were not bound because they were not signatories to the agreement. However, after more thorough consideration, we now conclude that this was not so.
It more clearly seems that from the point in time when defendants sent the draft (or acceptance of plaintiff's written offer) to plaintiff they also became bound by the agreement, and the agreement could be enforced against them irrespective of whether the draft was negotiable, and irrespective of whether they retained the right under the law (La.R.S. 10:3-101 et seq., entitled, Commercial Laws-Commercial Paper), with or without cause, to instruct the bank not to pay the draft when presented. We reach this conclusion because the release, signed by plaintiff, and defendant's $700.00 draft identified with the release, together constitute a compromise agreement in writing and signed by both parties.
Civil Code article 3071, relied on by plaintiff, provides:
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be reduced into writing.
While the statute itself does not provide for the consequences of failure to reduce a compromise agreement to writing, this Court has previously held that a compromise which is not reduced to writing is unenforceable. Bourgeois v. Franklin, 389 So.2d 358 (La. 1980); Jasmin v. Gafney, Inc., 357 So.2d 539 (La. 1978). Furthermore, we agree with plaintiff that the requirement that the agreement be reduced to writing necessarily implies that the agreement be evidenced by documentation signed by both parties. Singleton v. Bunge Corp., 364 So.2d 1321 (La.App. 4th Cir. 1978).
As was stated in Bourgeois, supra, "La. C.C. art. 3071 is placed in the code to insure proper proof of extra-judicial agreements. Inasmuch as there is no judgment on the merits outlining the obligations each party has to the other when a case is settled by the parties, the law has seen fit to require the compromise agreement, which sets out those obligations, to be reduced to writing to serve as proof of the agreement and the acquiescence therein." (Emphasis provided.) Obviously, to serve as written proof of the agreement and obligations of both parties, and their acquiescence therein, the written agreement must be signed by both parties, obligating both to do what they have agreed on.
However, the requirement that the agreement be in writing and signed by both parties does not necessarily mean that the agreement must be contained in one document. It would suffice that there be a written offer signed by the offerer and a written acceptance signed by the acceptor, even if the offer and the acceptance are *524 contained in separate writings. In other words, where two instruments, when read together, outline the obligations each party has to the other and evidence each party's acquiescence in the agreement, a written compromise agreement, as contemplated by La.C.C. art. 3071, has been perfected.
In the present case, Mr. Petty, Hartford's agent, went to Mr. Felder's home, where the parties agreed on the terms of the compromise agreement. The terms of the agreement were put into writing and that writing was signed by Mr. Felder. Mr. Petty signed the instrument as a witness and not as a party to it on defendants' behalf, or so it clearly appears from the writing. Therefore, it cannot be said that this release and settlement of claims was signed by both parties to it.
However, since the instrument is signed by Mr. Felder and contains the terms of the compromise, it does suffice as a written offer by Mr. Felder to settle all his claims against defendants for the sum of $700.00. In response to this offer, a Hartford agent with authority to act for all of the defendants, wrote out, signed and mailed a draft for $700.00 to Mr. Felder. On the face of the draft, there is a notation that the draft was being issued for "settlement in full all claims" to Walter Felder for a loss that occurred on February 12, 1979. We find that this written and signed draft suffices as a written acceptance of plaintiff's written offer. When read together the two instruments constitute a written compromise agreement outlining the obligations of each party and evidencing the acquiescence therein by both parties, and is, therefore, an enforceable compromise agreement under La.C.C. art. 3071.
Plaintiff makes the argument that the draft is not negotiable, and therefore defendants retained the right to refuse payment of the draft when it was presented at the bank. Plaintiff bases this argument on the fact that the draft contains the notation "Payable at the Connecticut Bank and Trust Co., Hartford, Ct."
Even if we assume for present purposes that the draft is not negotiable, the instrument contains the name of the claimant, the notation that there is a settlement in full of all claims for a loss that occurred on February 12, 1979, and the agreed upon sum of $700.00. As such, notwithstanding the fact that the instrument may not be negotiable, it nevertheless suffices as a written acceptance of plaintiff's written settlement offer, effecting a valid written compromise agreement between the parties under La.C.C. art. 3071.[*]
Plaintiff further contends that because he did not present the draft for payment he has somehow nullified any effects it might have had. We disagree.
Had plaintiff withdrawn his offer to settle the case prior to the mailing of the draft, then certainly the later mailing of the draft could not create a binding agreement between the parties. In that case the draft would represent nothing more than a written offer by defendants. Senegal v. Delahoussaye, 311 So.2d 58 (La.App. 3rd Cir. 1975). But plaintiff made no attempt to withdraw his offer to compromise the claim prior to his receipt of the draft.
Finally, plaintiff contends that the written compromise agreement that he signed did not evidence the entire agreement between the parties. He alleges more particularly that other promises were made to him concerning payment of his medical bills.
This contention is not supported by the record. Petty, at the hearing on the res judicata exception, did state that he told Felder that he had received a subrogation notice from Zurich Insurance Company, the plaintiff's compensation insurer, and that *525 Hartford would pay the compensation insurer for the funds it spent on Felder's medical bills. However, the employer's compensation insurer's claim against the tortfeasor that Petty said he intended to pay, is separate from the employee's claim against the tortfeasor, at least where the claim between the tortfeasor and the employee is settled, as was done in this case. The settlement or prospective settlement of the employee's claim against the tortfeasor has no direct bearing or effect upon the compensation insurer's claim against the tortfeasor. The plaintiff-employee will not be liable to the compensation insurer from the funds he recovers by way of settlement with the tortfeasor. See La.R.S. 23:1103; and Lalande v. Index Geophysical Survey Corp., 336 So.2d 1054 (La.App. 3rd Cir. 1976). Therefore, plaintiff's argument, that the fact that Petty mentioned Hartford's intention to pay the claim by Zurich indicates that the release agreement does not evidence the full agreement between the parties, is without merit.

Decree
For the foregoing reasons we hold that a valid and enforceable compromise agreement was entered into between the parties, and therefore defendants exception of res judicata was properly maintained.
AFFIRMED.
DIXON, C. J., dissents (the draft was not an unqualified acceptance of the offer.)
WATSON, J., dissents.
WATSON, Justice, dissenting.
Plaintiff, Walter Felder, a seventh grade graduate, was induced to make an uncounselled offer to settle his claim for $700. The defendant insurer, Hartford, then mailed Felder a draft for $700, but Felder did not endorse it or present it for payment. Felder apparently changed his intention to compromise before the Hartford draft was received or he would have endorsed it. Since his intention on the subject had changed, the concurrence of wills was missing and there was no valid contract. LSA-C.C. art. 1800. It is significant that Hartford's draft was not an unconditional acceptance of Felder's offer to settle because Hartford retained the option of refusing payment of the draft. Had Felder accepted the money by endorsing the draft and presenting it for payment, there would have been an assent to the settlement. A non-negotiated draft does not perfect a binding settlement. The majority errs seriously in enforcing a purported compromise agreement under these circumstances.
I respectfully dissent.
NOTES
[*] Because we find that even if the draft was not negotiable it nevertheless suffices as a written acceptance of plaintiff's offer, we make no determination as to the negotiability of the draft. However, we do point out that plaintiff's claim that the draft is not negotiable because it contains the words "Payable at the Connecticut Bank and Trust Co., Hartford, Ct.," is probably not well founded. See Bollich v. Louisiana Bank and Trust Co., 271 So.2d 274 (La.App. 3rd Cir. 1972).