CHEHARDY, Judge.
In this case the parties have posed an interesting question: Do the mere signing of a release form and endorsement of the accompanying settlement checks perfect a compromise of a claim so that the injured party is bound thereby, although she subsequently changes her mind, scratches out her endorsement on the checks and returns the checks without negotiating them?
Our Supreme Court has already answered that question with a “yes.” See Felder v. Georgia Pac. Corp., 405 So.2d 521 (La.1981). Thus, at first glance it appears plaintiff’s claim was barred. However, a technical error in the documents evidencing the compromise makes the settlement unenforceable, so that the defendants’ exception of res judicata cannot be maintained.
On July 23, 1982 Rebecca Shavers was involved in an automobile collision with a vehicle owned by defendant Plaquemines Parish Commission Council and driven by its employee, defendant Rudolph Olano Jr. Mrs. Shavers retained an attorney, who negotiated on her behalf with a claims adjuster representing the Plaquemines Parish Commission Council. As a result of these negotiations, Mrs. Shavers received a general liability release form and two checks, one in the amount of $210.15 and the other in the amount of $1,200.
The release form provided that in return for $1,410.15 Mrs. Shavers released the Plaquemines Parish Commission Council and Rudolph Olano Jr. from “any and all claims, demands, rights and causes of action of whatsoever kind and nature, arising from, and by reason of any and all known and unknown, foreseen and unforeseen bodily and personal injuries, damage to property, and the consequences thereof, resulting, and to result, [from the accident of July 23, 1982].”
On December 8, 1982 Mrs. Shavers signed the release form and endorsed the checks. She changed her mind later, how-, ever, scratched out her endorsement on the checks, and returned them. She then retained different counsel, who filed suit on her behalf on May 23, 1983.
The defendants filed an exception of res judicata, alleging that by signing the release and endorsing the checks Mrs. Shav *654 ers had consummated the compromise agreement and thus was barred from further proceedings.
There is no written judgment denying the exception; nor is there any transcript or minute entry in the record showing its disposition. According to the appellants’ brief, on the morning of trial the district judge denied the exception from the bench, stating that there was a lack of consideration for the compromise agreement because the checks tendered in payment thereof had never been negotiated. (The lack of a judgment on the exception does not prevent us from examining the matter on appeal. When a matter is appealed, the appellant may put at issue any of the interlocutory decrees he wishes.)
Thereafter the case proceeded to trial and judgment was rendered in favor of Mrs. Shavers against the defendants in the amount of $73,364.64. Due to an error in calculation the judgment was amended to increase the award to $81,050.64. The defendants appealed. The only issue raised before this court is the res judicata effect of the prior settlement.
In Felder v. Georgia Pac. Corp., supra, our Supreme Court concluded that a release in settlement of all claims signed by the injured party and the insurer’s draft identified with the release together constituted a compromise agreement in writing and signed by both parties as required by Louisiana Civil Code article 3071, although the draft was never presented for payment. The court concluded the settlement was valid and binding and barred the plaintiff’s suit.
In the Felder case the plaintiff had argued that the settlement was not enforceable because it was not signed by the defendants or their agent as a party to the agreement and therefore that it did not comply with C.C. art. 3071’s requirement that a settlement "must be reduced into writing.”
The Supreme Court stated,
“Initially, plaintiff’s argument seemed persuasive. The Code requires that compromise agreements be in writing, by implication signed by both parties. This release or compromise agreement was only signed by the claimant. Thus, it appeared that defendants had created a situation where only the claimant was bound. And while defendants could reap the benefits of having the claimant bound by the agreement, they themselves were not bound because they were not signatories to the agreement. However, after more thorough consideration, we now conclude that this was not so.
“It more clearly seems that from the point in time when defendants sent the draft (or acceptance of plaintiff’s written offer) to plaintiff they also became bound by the agreement, and the agreement could be enforced against them irrespective of whether the draft was negotiable * * *. We reach this conclusion because the release, signed by plaintiff, and defendant’s $700.00 draft identified with the release, together constituted a compromise agreement in writing and signed by both parties. [Emphasis added.]
* * * # # ⅜
“In other words, where two instruments, when read together, outline the obligations each party has to the other and evidence each party’s acquiescence in the agreement, a written compromise agreement, as contemplated by La.C.C. art. 3071, has been perfected.” 405 So.2d at 523, 524.
The Felder court pointed out,
“On the face of the draft, there is a notation that the draft was being issued for ‘settlement in full all claims’ to Walter Felder for a loss that occurred on February 12, 1979. We find that this written and signed draft suffices as a written acceptance of plaintiff’s written offer. When read together the two instruments constitute a written compromise agreement outlining the obligations of each party and evidencing the acquiescence therein by both parties, and is, therefore, an enforceable compromise *655 agreement under La.C.C. art. 3071.” 405 So.2d at 524.
Like Mrs. Shavers in the case before us, Felder also contended that because he did not present the draft for payment he had nullified any effects it might have had. The Supreme Court disposed of this argument:
“Had plaintiff withdrawn his offer to settle the case prior to the mailing of the draft, then certainly the later mailing of the draft could not create a binding agreement between the parties. In that case the draft would represent nothing more than a written offer by defendants. * * * But plaintiff made no attempt to withdraw his offer to compromise the claim prior to his receipt of the draft.” 405 So.2d at 524.
Although the case before us seems factually similar to the Felder case, the major difference is that the settlement checks issued by the Plaquemines Parish Commission Council are not identified with the release (which was signed only by Mrs. Shavers as a party to the agreement). The checks bear no identifying notations at all, other than the following printed legend at the top:
“Plaquemines Parish Commission Council
Pointe-a-la-Hache, Louisiana
Self-Insurance Fund”
Thus the checks could be in payment for anything, or at least any other damage claim. Without some identifying notation to indicate that the checks relate to the accident of July 23, 1982, they cannot be considered a signed acceptance by the defendants of Mrs. Shaver’s written and signed offer of compromise — the release form.
We conclude, therefore, that the settlement between Mrs. Shavers and the defendants was unenforceable, because it does not satisfy the requirements of LSA-C.C. art. 3071 and the jurisprudence interpreting that article that a compromise agreement must be in writing and signed by both parties.
For the foregoing reasons, the judgment of the district court is affirmed.
AFFIRMED.