599 So.2d 398 (1992)
Andree PITARD
v.
Joe DAVIS, et al.
No. 91-CA-580.
Court of Appeal of Louisiana, Fifth Circuit.
April 28, 1992.
*399 William D. Treeby, Randall A. Smith, New Orleans, for plaintiff/appellant.
Victor A. Dubuclet, III, Metairie, for defendant/appellee.
Peter A. Feringa, New Orleans, for defendants/appellees cross-appellants.
David E. Walle, New Orleans, for plaintiff/appellant and third-party defendant/appellee.
Before GRISBAUM, WICKER and CANNELLA, JJ.
WICKER, Judge.
This appeal arises from a negligence action filed on behalf of Andree Pitard, plaintiff/appellant, against defendants/appellees, Joe Davis (the driver of the vehicle which rear ended the vehicle in which Pitard was a passenger), Harvey Melville d/b/a Red Top Seafood (Davis' employer), Trinity Universal Insurance Company (Melville's insurer), James W. Hailey (the driver of the vehicle in which Pitard rode as a passenger), United States Fidelity & Guaranty Company (Hailey's liability and underinsured motorist carrier), State Farm and Liberty Mutual Insurance Companies, two *400 additional underinsured motorist carriers. Hailey was dismissed from suit. USF & G tendered $50,000.00 of its $250,000.00 underinsured motorist limits to Pitard. She reserved rights to proceed for the remaining coverage. Pitard signed a written release of her claims against Davis, Melville, Red Top and Trinity for $90,000. USF & G reconvened against Pitard seeking a refund of the $50,000.00. USF & G also filed a cross claim against Melville and Trinity to recover the $50,000.00. Melville filed a third party claim against Pitard seeking indemnification should USF & G prevail on its third party demand. The jury found Davis negligent and awarded $50,000.00 for pain and suffering, $45,800.00 for past lost wages and $0.00 for future lost wages. The trial judge dismissed USF & G's third party demand and reconventional demand and Melville's third party action. He took into account the jury award but added $13,500.00 for medical expenses as stipulated to by counsel. Thus, the damage award was increased to $109,300.00. Since the judgment including the interest did not exceed Trinity's policy limits of $90,000.00 and the $50,000.00 tender by USF & G the trial judge rendered judgment against Pitard, dismissing her suit. Pitard and USF & G have both appealed. We affirm.
Pitard specifies the following errors:
1. The trial judge erred in awarding an inadequate amount of damages for Ms. Pitard's pain and suffering.
2. The trial court erred in limiting the award of interest.
3. The trial court erred in assessing Ms. Pitard, the prevailing party, with her own costs of court.
4. The trial court erred in denying the plaintiff's proposed jury charge regarding multiple injuries caused by different tortfeasors.
5. The trial court erred in failing to grant a mistrial because USF & G's counsel violated the Court's pre-trial order not to raise the issue of prior settlements.

JURY CHARGE:
Pitard's trial counsel requested the following jury charge:
If you find that Miss Pitard's injuries are medically inseparable and that the independent acts of the two or more tort feasors concurred to produce Miss Pitard's injuries and damages, then there is no practical course except to hold the defendants, Joe Davis, Red Top Seafood, Harvey Melville, their liability insurers and the uninsured motorists insurers, USF & G, State Farm and Liberty Mutual for the entire loss.
On appeal Pitard's counsel argues the trial judge abused his discretion in not giving this charge. However, after the trial judge stated he would not give three of the proposed charges Pitard's counsel only stated, "Your Honor, I object to you not giving my charges."
We have held the failure to state grounds for objection results in the objections not being preserved for appeal. Creppel v. Coronation Shipping Co., 572 So.2d 1051 (La.App. 5th Cir.1990), writ denied, 575 So.2d 390 (La.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 60, 116 L.Ed.2d 36 (1991). In Creppel at 1053 we explained, "[a] blanket objection does not suffice, but must be accompanied by a statement of the grounds of the objection[.]"
We conclude from the record that Pitard's counsel did not preserve these objections for appeal.

PRIOR SETTLEMENTS:
Pitard contends it was error for the trial judge to deny a post-trial motion for a mistrial. Pitard's counsel recognizes in brief that "generally a motion for mistrial must be made before the end of the trial." However, he urges this court to exercise "its equitable powers." He contends he objected to questioning regarding Pitard's history of prior settlements. Nevertheless, he stated "trial counsel ... recognized that if Ms. Pitard did not answer the question posed by USF & G's counsel, the jury might be left with the impression that she received an even greater amount in settlement or that she had something to hide."
*401 Pitard's counsel also states in brief that the trial judge ruled in limine no evidence of settlements could be introduced. He refers to a statement made by counsel during trial that he was not allowed to bring up settlements. We find no ruling by the trial judge in that regard, however, in the record. Nevertheless, even had the trial judge so ruled we conclude any objection has been waived.
Pitard's counsel waived the right to seek a mistrial. He only moved for a mistrial seven months after the jury verdict. He also encouraged Pitard to answer the questions and did not seek any admonition. It is clear from the record Pitard's counsel was willing to have the jury consider this evidence. It was only seven months after that verdict that counsel moved for a mistrial. Under these circumstances these objections have been waived. See Johnson v. H.W. Parson Motors, Inc., 231 So.2d 73 (La.App. 1st Cir.1970). Moreover, "the requirement of a simultaneous objection would be meaningless if a party could reserve the right to register an objection until after an adverse verdict." Mobley v. General Motors Corp., 482 So.2d 1056, 1061 (La.App. 3rd Cir.1986), writ denied, 486 So.2d 735 (La.1986).

DAMAGES:
Pitard contends the jury was manifestly erroneous for awarding only $50,000.00 for pain and suffering.
The testimony at trial established that Pitard had multiple car accidents. The current accident occurred June 27, 1983. She also had the following car accidents: April, 1976, April 11, 1983, June 1985 and June 4, 1986. The jury heard various medical testimony relative to causation and/or aggravation of a previous neck injury. It had to weigh testimony and make a credibility determination regarding the issue of causation in order to decide the amount of damages sufficient to compensate her for the pain and suffering attributable to this accident. We do not reverse the jury's factual findings absent manifest error. Wahden v. Sanders, 507 So.2d 862 (La.App. 5th Cir.1987), writ denied, 508 So.2d 826 (La. 1987).
Dr. Bert Randolph Bratton, an expert in the field of medicine and neurosurgery, testified he first saw Pitard as a patient July 9, 1984.
He stated the June 27, 1983 accident worsened her neck and back problems. On examination he noted muscle spasm in the neck area. He found muscle strength, sensation and reflexes to be normal but noted a decrease in range of motion by about ½ of normal. He diagnosed her as having "chronic cervical and lumbar or neck and low back injury."
Since she did not respond to physical therapy he suggested surgery to remove the "damaged discs in the neck area and fuse the two weakened areas." This surgery was accomplished. She was discharged July 26, 1984.
Dr. Bratton was asked whether the June 27, 1983 accident was the more severe accident rather than the prior one of April 23, 1983. He stated he would have to defer to her prior treating physicians. He testified:
I am still going to defer to Dr. Jackson and Razza, `cause I didn't see her until after both accidents. And, my review of the history would in no way be accurate than their actual statements and testimony.
He stated there was no way he could tell whether the first accident or the second accident caused the problems for which he was treating her. He explained:
I can't tell from my evaluation at which time [the disc damage] occurred. And, I would certainly, since she was being treated and followed by two other appropriate consultants in the field, I would certainly defer to them.
Dr. Bruce Razza, an orthopedic surgeon, testified regarding whether the current accident caused Pitard problems resulting in her having the fusion surgery. He stated:
Again, I would best defer to Dr. Bratton, you know, who's the one who performed her surgery. But, I could not state with any medical certainty that the June '83 accident led to her [anterior cervical fusion].
* * * * * *

*402 I had no objective studies before and after to see a difference, to make me able to state with medical certainty that it did.
Dr. John Jackson, a neurosurgeon, testified he treated Pitard after both of her 1983 accidents. On June 16, 1983 he saw her. On that visit she complained of pain radiating into the arms with numbness in her fingers. This visit was shortly prior to the accident at issue. He agreed these could be symptoms of a bulging disc.
There is ample evidence in the record for the jury to conclude the accident at issue aggravated a preexisting neck injury which could have been symptomatic of a bulging disc.

JUDICIAL INTEREST:
Pitard asserts it was error for the trial judge to award legal interest only on the sum of $19,300.00 rather than on the total amount of the judgment. She also contends it was error to award interest from date of judicial demand until August 21, 1987, the date of USF & G's tender, rather than until November 20, 1987 when paid. In this case the judgment was for $109,300.00 reduced by credits of $90,000.00 paid by Trinity Insurance Company and $50,000.00 paid by USF & G. She contends USF & G as an underinsured motorist carrier in solido with the tortfeasor should be liable for interest on the total amount.
Trinity's liability policy provides:
B. WE WILL ALSO PAY.
In addition to our limit of liability, we will pay for the insured:
* * * * * *
4. All costs taxed to the insured in a suit we defend.
5. All interest accruing after the entry of the judgment in a suit we defend. Our duty to pay interest ends when we pay or tender our limit of liability ...
Additionally, in Dobson v. Aetna Casualty & Surety Co., 484 So.2d 976 (La. App. 3rd Cir.1986) the third circuit held the insurer was responsible for interest and costs until the policy limits were paid. In Dobson while the liability insurer was liable for the interest on the entire amount, the underinsured motorist carrier was relieved of its liability for interest. Thus, USF & G would not be liable for prejudgment interest.
Pitard received $90,000.00 from Trinity and $50,000.00 from USF & G. USF & G is entitled to the credit of $90,000.00 paid by the tortfeasor's insurer as well as the $50,000.00 credit it paid. Thus, USF & G was correctly assessed interest only on $19,300.00. Interest was also properly calculated as running until USF & G paid Pitard $50,000.00 August 21, 1987.

COSTS:
Pitard asserts it was error for the trial judge to assess costs against her. The trial judge reasoned as follows:
the judgment, including interest, does not exceed the primary limits of Trinity of $90,000.00 added to the $50,000.00 previously paid to plaintiff by USF & G accordingly.
He therefore rendered judgment as follows:
in favor of United States Fidelity & Guaranty Company against plaintiff, Andree Pitard, dismissing her suit with prejudice, each party to bear their own respective costs of court.
We find no abuse in the trial judge's discretion in assessing costs. La.C.Civ.P. art. 1920.

USF & G'S CROSS-APPEAL:
USF & G specifies the following errors:
1. The district court erred in dismissing USF & G's Cross claim against Melville for the $50,000 in UM benefits USF & G paid Pitard before Melville and his insurer entered into an enforceable compromise with her, and
2. Alternatively, the district court erred in dismissing USF & G's reconventional demand against Pitard for amounts USF & G over paid in excess of USF & G's liability as determined at trial.
The trial judge gave in part the following reasons for judgment:

*403 Miss Pitard was involved in an automobile accident in June of 1983. She filed suit against the driver of the other vehicle, Joe Davis, and his employer, Red Top Seafood, Inc. She also filed suit against USF & G, who provided uninsured motorist coverage for Ms. Pitard through the Hailey vehicle, and against State Farm and Liberty Mutual who provided secondary levels of uninsured motorist coverage. In 1987, the plaintiff settled her claims against the liability carrier for Joe Davis and Red Top Seafood, Inc. for $90,000.00. After the settlement was completed, counsel for Ms. Pitard made demand on USF & G through counsel for USF & G for payment under Hailey's uninsured motorist coverage in her policy. On August 20, 1987, counsel for USF & G sent a check for $50,000.00 to Ms. Pitard as an unconditional tender. The tender was accepted by Ms. Pitard and the check was cashed. Finally, on January 25, 1988, USF & G filed a reconventional demand against Andree Pitard seeking the return of $50,000.00.
Under Louisiana Revised Statute 22:658, an uninsured/underinsured carrier must transmit any amount not in dispute to its insured within 60 days of receiving proof of loss and a demand for payment. McDill v. Utica Mutual Insurance Company, 475 So.2d 1985 [1085] (La.1985). Amounts which are disputed between the parties need not be tendered until a determination is made whether the amounts are due. Sibley v. Insured Lloyds, 442 So.2d 627 (La.App. 1 Cir.1983). However, if it is determined that an insurance carrier was arbitrary or capricious in its refusal to unconditionally tender amounts in dispute, that carrier will be liable for penalties. LSA-R.S. 22:658.
An insurance carrier must make an attempt to determine the reasonableness of a demand made upon it and the reasonableness of the amount demanded. If an insurance company has reasonable grounds for refusing to pay a claim made under a policy for uninsured motorist coverage, it will not be held liable at a later date for penalties if it is determined that the amount demanded is due and owing under an uninsured motorist policy. Sibley, supra; O'Brian v. Allstate, 420 So.2d 1222 (La.App. 3 Cir.1982). Shatoska v. International Grain Transfer, Inc., 430 So.2d 1255 (La.App. 2 Cir. 1983) appeal after remand, 465 So.2d 32, 47 So.2d 725.
USF & G seeks the return of the $50,000.00 tendered to Andree Pitard on the grounds that information received by USF & G subsequent to the tender gave USF & G reason to believe that an amount less than $50,000.00 would be owed to Miss Pitard if any amount was owed at all. Specifically, USF & G claims that they were unable to determine the number and severity of plaintiff's accidents and were unable to depose any of the plaintiff's treating physicians prior to making the tender of $50,000.00. See USF & G Amended Answer and Reconventional Demand, page 3, paragraph 4. After reviewing the record, the Court finds this argument to be without merit.
USF & G evaluated the claim of plaintiff with the information available at the time. USF & G made a tender it believed to be reasonable under the circumstances. The tender was accepted and was not subject to refund or reduction as it is an unconditional tender.
USF & G also made a claim by third party against Joe Davis, Harvey Melville and Jim Graves d/b/a Red Top Seafood and Trinity Insurance Company seeking reimbursement and indemnification from those parties with respect to all sums which USF & G might become liable to the plaintiff. At a hearing on this issue the record reflects that the plaintiff, Pitard, and Trinity Insurance Company on its on [sic] behalf and on behalf of its insured settled their dispute for the sum of $90,000.00 on June 24, 1987. The testimony and the evidence supported the proposition that the settlement had been reduced to writing was agreed to by plaintiff and defendant, Trinity, et al., although the funds had not yet been *404 transferred. Prior to the funds being submitted to plaintiff but subsequent to June 24, 1987, USF & G made demand as indicated above.
Both parties rely on Bosch v. Cummings, 520 So.2d 721 (1988). This Court finds that the compromise and settlement had been accomplished on June 24, 1987, prior to the subrogation claim by USF & G and that therefore according to the Bosch decision USF & G could not acquire the insured's right against the tortfeasor because it no longer exists. Accordingly, the claim for reimbursement and indemnification by USF & G is dismissed at its costs.
By way of explanation Liberty Mutual and State Farm were the uninsured motorist carrier for plaintiff, Andree Pitard, whose policies overlapped and were stacked should the jury award exceed the uninsured motorist coverage provided by United States Fidelity and Guaranty provided on the Hailey vehicle.
The tortfeasor's policy, issued by Trinity Insurance, had limits of $100,000.00. In their settlement with the plaintiff, Trinity did not pay the full policy limits, however. Trinity settled with the plaintiff for $90,000.00.
Since Trinity had settled the claim with plaintiff no sums were due from Trinity or their insured. USF & G was entitled to a credit of $100,000.00 and therefore would only be liable to plaintiff for $9,300.00. However, because USF & G had tendered a sum in excess thereof nothing is due plaintiff as of the judgment of the jury.
The record supports the trial judge's conclusions that USF & G did have available information making the tender reasonable at the time and that a compromise and settlement had been accomplished June 24, 1987. We find no manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989).
The evidence and testimony established that Mr. Leonard A. Radlauer, Pitard's attorney, wrote USF & G's attorney, Mr. John F. Olinde, on June 24, 1987 informing him of an agreement to settle Pitard's "claim against the liability carrier for Red Top Seafood for policy limits." USF & G is the underinsured motorist carrier. The actual receipt, release and indemnity agreement was not executed until November 20, 1987. On August 20, 1987 USF & G sent a $50,000.00 check to Pitard's attorney which was received and cashed. Mr. David Walle, who represented Red Top Seafood and Trinity Universal Insurance Company, testified Mr. Radlauer made a demand for the policy limits and letters were sent between counsel confirming the agreement to pay the policy limits.
We have held that a uninsured motorist carrier is subrogated for the payment it makes before a settlement between a plaintiff and the tortfeasor. Serpas v. Ridley, 556 So.2d 134 (La.App. 5th Cir.1990). There were letters written by counsel agreeing to settle Pitard's claim against the tortfeasor. One document is not required under Felder v. Georgia Pacific Corp., 405 So.2d 521 (La.1981). Felder requires that:
[w]hen read together the two instruments constitute a written compromise agreement outlining the obligations of each party and evidencing the acquiescence therein by both parties, and is, therefore, an enforceable compromise agreement under, La.C.C. art. 3071. [emphasis added].
Id. at 524.
The letters introduced by counsel make it clear there was an "enforceable" compromise before the UM tender.
USF & G argues alternatively that it has also filed a reconventional demand against Pitard seeking a refund of $22,208.00 as being overpaid to her. The trial court awarded $109,300.00 in damages. USF & G asserts its UM coverage did not take effect until Trinity's $90,000.00 payment was exhausted; thus, under the judgment USF & G was liable only for $19,300.00 with interest of $8,492.00. USF & G argues its total liability was $27,792.00. It paid $50,000.00. It contends it is due a refund of $22,208.00. It relies on the Fourth Circuit which has recently held:
the insurer can recover the overpayment because the contract of insurance is the law between the parties. The provision of that contract relating to underinsured *405 motorist coverage requires the insurer to pay only the uninsured portion of the actual damages, and we interpret this to mean damages judicially determined, in this case by a jury, just as the liability provisions mean an insurer is liable to third parties only for judicially determined damages.
United Services Automobile Association v. Dr. Joseph E. Dugas, Jr., 593 So.2d 918, 920 (La.App. 4th Cir.1992).
However, the testimony at the hearing established the tender was an unconditional tender. We decline to follow the majority opinion in Dugas, supra and adopt the reasoning set forth in the dissenting opinion in Dugas, supra at 923 (Huff, J., dissenting) as follows:
I respectfully dissent.
The majority decision places a "condition" on the "unconditional" payment pursuant to LSA RS 22:658. The net effect of the decision is that a payment under LSA RS 22:658 must now be held in escrow until the rendition of the final judgment to determine what, if any, portion of the payment is subject to a refund to the insurance company.
The payment under LSA RS 22:658 was made for the sole purpose of avoiding the imposition of penalties and attorney's fees. This is what the insurance company received for its payment. Penalties and attorney's fees would not be imposed in this case because the payment was greater than the final judgment and if the final judgment had been $200,000.00 the insurance company would have argued against the imposition of penalties and attorney's fees on the judgment in excess of its payment on the basis that its payment was not arbitrary, capricious or without probable cause.
If the legislature had intended for the "unconditional" payment under LSA RS 22:658 to be subject to the "condition" set forth in the majority opinion, it could easily have included such a "condition" in the statute. It is submitted that such a provision was not inserted because it would have destroyed the very purpose for the enactment of the statuteto insure the timely payment by the insurance company of the portion of the claim which is due so the insured could immediately use the funds to alleviate the damages suffered.
Accordingly, for the reasons stated, the judgments of the trial court are affirmed.
AFFIRMED.