753 So.2d 357 (2000)
Gerald and Vickie DOIRON
v.
LOUISIANA FARM BUREAU MUTUAL INSURANCE COMPANY and Louisiana Farm Bureau Casualty Insurance Company.
No. 98 CA 2818.
Court of Appeal of Louisiana, First Circuit.
February 18, 2000.
*359 David J. Shea, Lirette & Shea, Houma, for Plaintiffs-Appellees Gerald Doiron, Jr. and Vickie Doiron.
John J. Hainkel, Jr., Porteous, Hainkel, Johnson, & Sarpy, New Orleans, for Defendant-Appellant Louisiana Farm Bureau Mutual Insurance Company.
Before: SHORTESS, C.J., PARRO, and KUHN, JJ.
PARRO, J.
An insurer appeals from the trial court judgment granting its insureds' motion for summary judgment and awarding $12,200 to the insureds. For the following reasons, we reverse the judgment of the trial court and render judgment in favor of the insurer on the issue of coverage.

Facts and Procedural History
Gerald Doiron, Jr. and Vickie Doiron were named insureds on a homeowner's policy issued by Louisiana Farm Bureau Mutual Insurance Company (Farm Bureau) covering their home located at 226 Imperial Drive, Houma, Louisiana. Mr. Doiron constructed a bulkhead on the rear of their property to separate it from Little Bayou Black. On January 17, 1997, the bulkhead separated from the land and leaned toward the bayou. The single family dwelling, which was the only building on the property, was unaffected by the event.
Mrs. Doiron worked in the claims department of Allstate Insurance Company (Allstate) as a control operator. Prior to filing a claim with Farm Bureau, she discussed the incident with her supervisor, who informed her that it was doubtful that such an occurrence would be covered under any policy issued by Allstate. Nonetheless, Mrs. Doiron contacted Farm Bureau to inquire about coverage. A loss notice was completed by her insurance agent, and Marc Clause, Farm Bureau's adjuster, handled the claim and investigated the incident. During a telephone conversation with Mrs. Doiron, he informed her that he was not sure whether the policy provided coverage for such an occurrence. After visiting the Doirons' property and investigating the incident, Mr. Clause concluded there was coverage for the loss under policy provisions pertaining to other structures. Upon presentation of the invoices for the original work that had been performed, Mr. Clause had Farm Bureau issue a draft for $12,200 to Gerald Doiron and the loss payee, Chase Manhattan Bank (Chase).[1] He informed Mrs. Doiron there would be a delay of three to five days before payment of the draft. Two business days after the draft had been given to the Doirons and forwarded to Chase, Mr. Clause was advised by his supervisor that the Doirons' policy did not provide coverage for this type of occurrence. Farm Bureau immediately issued a stop payment order on the draft, and Mr. Clause contacted Mrs. Doiron, advised her of his mistake, and informed her the policy did not provide coverage. *360 Subsequently, Chase returned the draft to the Doirons.
The Doirons filed suit seeking to recover under their homeowner's policy for damages to a "structure/seawall." Farm Bureau responded by filing an exception raising the objections of no right of action and no cause of action and a motion for summary judgment on the issue of coverage. Subsequently, the Doirons filed a motion for summary judgment claiming that Farm Bureau was estopped from making any coverage defense due to the issuance of the draft. Following a hearing on the motions for summary judgment, the trial court found that a settlement had been reached but denied the Doirons' claim for attorney fees. From a judgment granting the Doirons' motion for summary judgment and awarding $12,200 to them, Farm Bureau appealed, contending the trial court erred in granting the Doirons' motion for summary judgment and in denying its motion for summary judgment.

Standard of Review
Appellate courts review summary judgments de novo under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. J. Ray McDermott, Inc. v. Morrison, 96-2337 (La.App. 1st Cir.11/7/97), 705 So.2d 195, 202, writs denied, 97-3055, 97-3062 (La.2/13/98), 709 So.2d 753, 754. A motion for summary judgment is properly granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). Appellate review of questions of law is simply to determine whether the trial court was legally correct or legally incorrect. See Minor v. Casualty Reciprocal Exchange, 96-2096 (La.App. 1st Cir.9/19/97), 700 So.2d 951, 953, writ denied, 97-2582 (La.12/19/97), 706 So.2d 463.

Compromise or Transaction
Farm Bureau argues the trial court erroneously determined that the actions of the parties constituted an enforceable settlement, relying on Louisiana Civil Code article 3071, which provides in pertinent part:
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding.
Compromises are favored and are not invalidated lightly. Jerome v. Duggan, 609 So.2d 1119, 1123 (La.App. 2nd Cir.1992). Nonetheless, the burden of proof was on the Doirons to establish the requisites for a valid compromise. Shell Oil Company, v. Jackson, 94-1267 (La.App. 1st Cir.5/5/95), 655 So.2d 482, 486; see Brown v. Drillers, Inc., 93-1019 (La.1/14/94), 630 So.2d 741, 752-757. Article 3071 expressly requires that a contract of compromise be in writing. While this article itself does not provide for the consequences of failure to reduce a compromise agreement to writing, the supreme court has previously held that a compromise which is not reduced to writing is unenforceable. Sullivan v. Sullivan, 95-2122 (La.4/8/96), 671 So.2d 315, 317. Moreover, the requirement that the agreement be reduced to writing necessarily implies that the agreement be evidenced by documentation signed by both parties. Sullivan v. Sullivan, 671 So.2d at 317.
The record reveals that no compromise was ever recited in open court. Thus, the issue before this court is whether the writing requirement of Article 3071 was satisfied in this case. A notice of loss was completed by the Doirons' insurance agent. This form disclosed a claim for the *361 loss of a bulkhead and land. It was signed by the insurance agent but was not signed by the insureds. The draft given to Mrs. Doiron by Mr. Clause via hand delivery was payable to Mr. Doiron and stated on its face that it was in full payment for bulkhead repairs. There was no specific release language on the draft, and no separate release was presented to or signed by the Doirons. Because the draft was made payable to Mr. Doiron and Chase, Mrs. Doiron sent the draft, without Mr. Doiron's endorsement, to Chase to have it endorsed. The draft was returned to the Doirons by Chase after the stop payment order was issued by Farm Bureau. Neither the Doirons nor Chase presented the draft for payment. Based on this evidence, Farm Bureau urges there is no writing or signature by either of the Doirons to evidence their agreement to settle the matter for $12,200 prior to the draft being voided by the stop payment order.
In arguing that their actions upon receipt of the draft constituted acceptance by them, the Doirons stated:
The sending of the draft to [Chase] was the first step in the endorsement and negotiation process. If the draft was made payable to only the Doirons, there is no question that they would have endorsed the draft and gone directly to the bank. They would have deposited the draft into their account. Because this draft was made payable to [Mr.] Doiron and [Chase], it had to be sent to [Chase] for its signature. The fact that the draft was made payable to both entities should not make a difference. The Doirons sent the draft to Chase and started the process to negotiate the draft....
Clearly, a draft may serve as a written compromise where it recites that it is in full payment for all claims as a result of an accident and the draft is endorsed and negotiated. Doga v. Southern Farm Bureau Insurance Company, 511 So.2d 78, 80 (La.App. 3rd Cir.1987), citing Audubon Insurance Company v. Farr, 453 So.2d 232 (La.1984). The Doirons, by endorsing and cashing the issued draft, could have effected a compromise of their claim against Farm Bureau. The evidence is clear that the Doirons did not fulfill these requirements.
In the absence of such actions by the Doirons, it was still possible for a valid compromise to have existed. The requirement that an agreement be in writing and signed by both parties does not necessarily mean an agreement must be contained in one document. A written offer signed by the offerer and a written acceptance signed by the acceptor, even if the offer and the acceptance are contained in separate writings, will suffice. In other words, where two instruments, when read together, outline the obligations each party has to the other and evidence each party's acquiescence in the agreement, a written compromise agreement, as contemplated by Article 3071, has been perfected. Felder v. Georgia Pacific Corp., 405 So.2d 521, 523-524 (La.1981).
The court in Felder found that the settlement document signed by the plaintiff sufficed as a written offer by the plaintiff to settle all of his claims against the defendants for a specific sum. The court found that a draft issued on behalf of the defendants for that amount which contained a notation that it was in settlement in full of all claims to the plaintiff for a loss that occurred on the date of the accident, constituted a written acceptance of the plaintiffs written offer. Reading these two documents together, the court concluded an enforceable compromise agreement existed. Felder v. Georgia Pacific Corp., 405 So.2d at 524. The fact that the draft had not been endorsed and negotiated by the plaintiff was found to have been irrelevant in determining whether the draft sufficed as a written acceptance of the plaintiffs written settlement offer or whether a valid compromise existed. Felder v. Georgia Pacific Corp., 405 So.2d at 524.
The record in this case reveals a telephone call by Mrs. Doiron to the insurance *362 agent inquiring about coverage, a loss notice completed and signed by their agent, and verbal communications between Mr. Clause and Mrs. Doiron. There is no evidence in the record to show that the Doirons made a written offer to Farm Bureau prior to the issuance of the draft. Therefore, the draft issued to Mr. Doiron on behalf of Farm Bureau containing a notation that it was in full settlement for bulkhead repairs may have been sufficient to constitute a written offer by Farm Bureau, but not an acceptance of any written offer. To succeed on their claim of a settlement in this event, the Doirons were required to establish the existence of a written acceptance by them of Farm Bureau's written offer. See Jerome v. Duggan, 609 So.2d at 1124; Singleton v. Bunge Corporation, 364 So.2d 1321, 1324 (La.App. 4th Cir.1978).
In this case, the Doirons failed to submit satisfactory proof of a written acceptance of Farm Bureau's written offer. Although the Doirons may have decided to accept Farm Bureau's offer, there is no evidence of record that such an acceptance was made in writing. Until the parties signed a written document or documents evincing their consent to the terms of their earlier oral agreement, either party was free to change his or her mind. See Sullivan v. Sullivan, 671 So.2d at 318. Absent a prior written acceptance, Farm Bureau was free to withdraw its offer of settlement, and the Doirons were free to reject Farm Bureau's offer. In light of Farm Bureau's timely withdrawal of its written offer, the Doirons have failed to prove the existence of a valid compromise in compliance with Article 3071. Therefore, the trial court was legally incorrect in granting the Doirons' motion for summary judgment.

Coverage
Farm Bureau argues the trial court erred in denying its motion for summary judgment on the issue of coverage based on a finding that there were unresolved factual issues.[2] Farm Bureau submits that any unresolved factual issues pertaining to whether the damaged bulkhead constitutes a "sea wall" are irrelevant in resolving the issue of coverage in this case.
An insurance policy is a contract between the parties and should be construed employing the general rules of interpretation of contracts set forth in the Louisiana Civil Code. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. The parties' intent, as reflected by the words of the policy, determine the extent of coverage. See LSA-C.C. art. 2045. Words and phrases used in a policy are to be construed using their plain, ordinary, and generally prevailing meaning, unless the words have acquired a technical meaning. LSA-C.C. art. 2047. An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Where the language in the policy is clear, unambiguous, and expressive of the intent of the parties, the agreement must be enforced as written. See LSA-C.C. art. 2046. However, if after applying the other rules of construction an ambiguity remains, the ambiguous provision is to be construed against the drafter and in favor of the insured. Reynolds v. Select Properties, Ltd., 634 So.2d at 1183.
The purpose of liability insurance is to afford the insured protection for damage claims. Policies therefore should be construed to effect, and not to deny, coverage. Thus, a provision which seeks to narrow the insurer's obligation is strictly construed against the insurer, and, if *363 the language of the exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied. Reynolds v. Select Properties, Ltd., 634 So.2d at 1183. However, subject to the above rules of interpretation, insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy. Reynolds v. Select Properties, Ltd., 634 So.2d at 1183. The rule of strict construction does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists. Muse v. Metropolitan Life Ins. Co., 193 La. 605, 192 So. 72, 75 (1939). Nor does it authorize courts to alter the terms of policies under the guise of contractual interpretation when the policy provisions are couched in unambiguous language. Pareti v. Sentry Indemnity Company, 536 So.2d 417, 420 (La.1988).
With these guiding principles in mind, as well as the principle that an insurance contract is to be construed as a whole and one portion should not be construed separately at the expense of another,[3] we examine the Farm Bureau insurance policy. In arguing that no genuine issues of material fact exist that preclude the granting of summary judgment on the coverage issue, Farm Bureau directs this court's attention to three sections of the policy. The policy sets forth the following categories of property coverages"Coverage ADwelling," "Coverage BOther Structures," "Coverage CPersonal Property," "Coverage DLoss of Use," and "Additional Coverages." Coverage B expressly provides coverage for certain other structures on the residence premises set apart from the dwelling by clear space such as "fences, property line and similar walls, including sea walls." With respect to the property described in Coverage B, as well as Coverage A, the "Perils Insured Against" section of the policy clearly insures against risks of direct physical loss to such covered property; however, coverage is not afforded for loss "involving collapse, other than as provided in Additional Coverage 8." In relevant part, paragraph 8 of the provisions pertaining to "Additional Coverages" provides:
Collapse. We insure for direct physical loss to covered property owned by any insured involving collapse of a building or any part of a building caused only by one or more of the following:
a. Perils Insured Against in Section I;
b. hidden decay;
c. hidden insect or vermin damage;
d. weight of contents, equipment, animals or people;
e. weight of rain which collects on a roof; or
f. use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.
Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b, c, d, e, and f unless the loss is a direct result of the collapse of a building.
The Doirons argue that the structure in question was a sea wall or other structure and covered pursuant to the provisions of "Coverage B." Farm Bureau does not dispute that the bulkhead in question was a covered structure. However, Farm Bureau contends this fact alone is not determinative, since the policy goes on to limit coverage when the loss to covered property involves collapse. When read as a whole, the only reasonable interpretation is that the policy excludes coverage for loss involving collapse, except when the loss involves the collapse of a building or any part of a building resulting from certain *364 enumerated causes. These provisions are not subject to more than one reasonable interpretation under the facts of this case. The policy in this regard is not ambiguous. In order for coverage to exist in this case, the collapse of the bulkhead must have been involved with the collapse of the Doirons' home, which was the only building on the property, as a result of a cause enumerated in paragraph 8 of the "Additional Coverages" provisions. Furthermore, that portion of paragraph 8 of the "Additional Coverages" provisions which specifically addresses loss to a bulkhead only affords coverage when such loss is the direct result of the collapse of a building. The Doirons admit that the loss of their bulkhead did not involve collapse of their home. Thus, the evidence does not show that the damage was caused by a peril for which the policy provided coverage for this structure. Accordingly, summary judgment in favor of Farm Bureau is appropriate.

Decree
For the foregoing reasons, the judgment of the trial court, granting the Doirons' motion for summary judgment and awarding them $12,200, is reversed. It is ordered, adjudged, and decreed that there be judgment in favor of Louisiana Farm Bureau Mutual Insurance Company, granting its motion for summary judgment on the issue of coverage and dismissing the claims of Gerald Doiron, Jr. and Vickie Doiron. All costs, trial and appeal, are assessed to Gerald Doiron, Jr. and Vickie Doiron.
REVERSED AND RENDERED.
NOTES
[1] Farm Bureau's policy provided coverage of $122,000 to the principal dwelling and 10 percent of that amount for other structures.
[2] Whether an insurance policy, as a matter of law, provides or precludes coverage is a dispute which can be properly resolved within the framework of a motion for summary judgment. West v. Louisiana Indemnity Company, 26,845 (La.App. 2nd Cir.4/5/95), 653 So.2d 194, 195, writ denied, 95-1099 (La.6/16/95), 655 So.2d 337.
[3] Pareti v. Sentry Indemnity Company, 536 So.2d at 420; see LSA-C.C. art. 2050.