U STEWART, J.
Joseph Merritt (“Merritt”) appeals the trial court’s dismissal of his suit on the basis of its finding that the parties had entered into a valid compromise agreement settling his claims against Safeway Insurance Company of Louisiana (“Safeway”). For the reasons assigned below, we affirm.
FACTS
On June 5, 2000, Merritt was performing repairs on the windshield wipers of a vehicle owned by J.B. Nolan and insured by Safeway when he injured his hand as a result of the wipers being activated. The injuries to Merritt’s hand required surgery, and he incurred various related medical expenses.
On or about June 15, 2000, Merritt contacted Safeway to inform it of his claim, and he spoke to claims adjuster, Bridget Henry. Merritt testified that he did not recall ever sending Safeway any copies of medical bills.
A few days later, Merritt contacted Ms. Henry again regarding a potential settlement of the case. The call was placed from the home of Merritt’s friend, Lorraine Gibson. Apparently, the phone handset was broken and Merritt had to use the speaker phone which allowed Ms. Gibson to hear the entire conversation. Gibson testified that Ms. Henry told Merritt that Safeway “would pay up to $5,000 on medical, $5,000 on his pain and suffering.” Although, he gave no specific account of what Ms. Henry actually said, Merritt testified that it was his impression that the policy had liability limits of $10,000.00 and that Safeway would pay him $5,000.00 for his pain and suffering and up to $5,000.00 for medical bills. Both Merritt | j>and Ms. Gibson testified that Ms. Henry did not specifically mention that she was in possession of any of Merritt’s medical bills. Despite the fact that no settlement was reached during that conversation, Ms. Henry testified Merritt contacted her on June 22, 2000, and informed her that he would be in the Lafayette area the following day and that he was ready to settle his claim. She claims they discussed what medical documentation was needed regarding the treatment he had received in order for Safeway to pay those medical bills.
On the following day, Merritt contacted Ms. Henry again to advise her that he was ready to settle, and according to Ms. Henry they again discussed the terms of settlement. She advised him that they would pay him $5,000.00 for pain and suffering and all medical bills incurred through the date of settlement so long as they did not exceed $5,000.00.
Merritt stopped by Safeway’s office on June 23, 2000, and while there is some disagreement as to whether he met with Ms. Henry or not, all parties agree that he picked up a letter and a check in the amount of $5,000.00. The letter reads as follows:
Dear Mr. Merritt:
This letter will confirm our telephone agreement on 6-23-00 regarding settlement of your injury claim.
*1258 Please find enclosed the settlement check of $5,000.00 payable to you. Endorsement of the check constitutes receipt and release of Safeway and its insured(s). Since all medical bills are not available, I have agreed to pay all related medical bills incurred through today to each provider. This is with the understanding that the medical bills should not exceed $5,000.00 as we only have $10,000.00 policy limit [sic].
|aIf you should have any questions, please feel free to contact me at one of the above listed telephone numbers., Sincerely,
Bridget Henry
Claims Adjuster
The check accompanying the letter was made out to Merritt for $5,000.00 and had a notation on the front indicating that it was for “Full Settlement Arising Out of Accident Occurring on 6-05-00.” Furthermore, the back of the check contained the following language just above the endorsement line:
If Payee is not the Assured the endorsement of this check constitutes a release and receipt of claims against the Safeway Insurance Company of Louisiana, Assured or any other Party on account of claim or accident referred to on the face hereof.
Ms. Henry testified that she met with Merritt, confirmed his identity by requesting and copying his driver’s license and reviewed the terms of the settlement before he left with the letter and check. Merritt testified that he met with a blond assistant of Ms. Henry’s who delivered the letter and check to him and assured him it was in accordance with the agreement he and Ms. Henry had made over the phone. There is no dispute that Merritt received the letter and check, and later negotiated the check by signing the back of it.
Safeway subsequently issued four more checks as follows:
1.) Check # 054760 payable to Lincoln General Hospital July 7, 2000 in the amount of $778.95.
2.) Check # 054841 payable to Merritt on July 10, 2000 for prescription reimbursement in the amount of $26.86.
| ¿3.) Check # 054842 payable to Ruston-Lincoln Ambulance Service on July 10, 2000 in the amount of $355.16.
4.) Check # 055329 payable to Green Clinic Rehab Services on July 18, 2000 in the amount of $321.00.
Ms. Henry testified that at the time the settlement was reached she had the bills reflecting the amounts represented by the first three checks, and that she had instructed Merritt to obtain the invoice for the services provided by the Green Clinic through the date of the settlement so they could pay the bills as per their agreement. Merritt testified that he contacted the Green Clinic and gave them Safeway’s fax number so that they could forward the invoice directly to Safeway.
Merritt filed the instant suit on May 31, 2001, claiming that Safeway owed the remainder of the difference between the medical bills previously paid by Safeway and $5,000.00 as his medical bills had subsequently surpassed the $5,000.00 cap. Safeway responded by asserting the affirmative defense that a compromise had previously been reached between the parties on this cause of action which would have res judicata effect as to the present claim being asserted.
The trial court agreed and dismissed Merritt’s claims with prejudice. This appeal followed.
DISCUSSION
Louisiana Civil Code article 3071 defines transaction or compromise as:
Ik A transaction or compromise is an agreement between two or more per *1259 sons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.
Louisiana Civil Code article 3078 addresses the res judicata effect of a transaction or compromise and states:
Transactions have, between the interested parties, a force equal to the authority of things adjudged. They can not [sic] be attacked on account of any error in law or any lesion. But an error in calculation may always be corrected.
La. C.C. art. 3071 refers to a compromise as a contract that must be reduced into writing. Obviously, the check meets the writing requirement of La. C.C. art. 3071. We must determine whether the check was a contract of compromise, and if so, whether the endorsement and negotiation by Merritt of the check signified consent. We note that this court has previously recognized that a check can serve as a compromise if it recites that it is in full payment for all claims and the draft is endorsed and negotiated. Jerome v. Duggan, 609 So.2d 1119 (La.App. 2d Cir.1992).
La. C.C. article 1906 defines a contract as an agreement by two parties whereby obligations are created, modified or extinguished. The check represents an agreement, because it is signed by both parties, and it contains terms, especially that of: “FULL SETTLEMENT ARISING OUT OF ACCIDENT OCCURRING ON 6 05 00.” The terms of the agreement Land purpose for the payment of the money were further illustrated by the letter that accompanied it. The letter clearly explains that the intent of tendering the check along with Safeway’s agreement to pay all medical bills incurred by Merritt as of June 23, 2000, is to settle Merritt’s claims against it and its insured, and that by endorsing the check he releases Safeway and its insured. Thus, the object of the contract was to settle the matter between the parties. Finally, Merritt’s consent to this contract is evidenced by his endorsement and negotiation of the check just below the receipt and release language quoted above.
We find the present situation constitutes the permissible form of compromise described by the Louisiana Supreme Court in Felder v. Georgia Pacific Corp., 405 So.2d 521 (La.1981), as follows:
[T]he requirement that the agreement be in writing and signed by both parties does not necessarily mean that the agreement must be contained in one document. It would suffice that there be a written offer signed by the offerer and a written acceptance signed by the acceptor, even if the offer and the acceptance are contained in separate writings. In other words, where two instruments, when read together, outline the obligations each party has to the other and evidence each party’s acquiescence in the agreement, a written compromise agreement, as contemplated by La. C.C. art. 3071, has been perfected.
Merritt has argued in his brief that parole evidence is admissible to show an error of fact vitiating consent which could in turn serve as the basis for rescinding a compromise. Presumably to prove such error he cites the alleged acknowledgment by the claims adjuster of her awareness that Merritt was in a hurry to settle. We fail to see how this fact alone vitiates *1260 Merritt’s consent to the compromise. Furthermore, the record fails to reveal any other substantive inconsistencies between the parties’ version of events. |7 Ms. Henry testified that she extended to Merritt the offer to settle for $5,000.00 for pain and suffering and all incurred medical expenses through the date of settlement not to' exceed $5,000.00. While Merritt has testified as to his understanding of the agreement reached between the parties as being $5,000.00 for pain and suffering and no more than $5,000.00 for medical expenses, neither he nor his friend Ms. Gibson expressly denied that Ms. Henry used the caveat regarding a cutoff date for medical expenses. Merritt’s testimony is entirely consistent with Ms. Henry’s testimony with the exception that it makes no mention, either in denial or admission, that the offer on medicals was subject to a cutoff date.
Merritt also argues that Safeway’s actions are inconsistent with the assertion that the $5,000.00 check constitutes a contract of compromise because they subsequently issued checks to cover Merritt’s aforementioned medical expenses. We see no such inconsistency. Safeway’s actions were entirely in accordance with the compromise agreement as set forth in their letter. The fact that they acted in accordance with that agreement by not claiming that the check alone was controlling should not be held against them.
Merritt admits having received the letter and the check simultaneously. He testified at trial, however, that he did not read the letter before negotiating the check and he did not read any of the release language on the check before signing it. He should not now be heard to complain that he was unaware of the terms of the agreement which were clearly spelled out in the documentation provided to him.
J^CON CLUSION
For the foregoing reasons, we affirm the judgment of the trial court dismissing Merritt’s claims against Safeway. The costs of this appeal are assessed against appellant.
AFFIRMED.
BROWN, C.J., concurs with written reasons.