STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 13-889

SYLVIA LEMOINE, ET AL.

VERSUS

XAVIER DESMOND THORNTON, ET AL.

**********

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2011-6598-B
HONORABLE WILLIAM BENNETT, DISTRICT JUDGE

**********

JOHN E. CONERY
JUDGE

**********

Court composed of Marc T. Amy, Billy Howard Ezell, and John E. Conery, Judges.

REVERSED AND REMANDED.

Edward E. Rundell
Gold, Weems, Bruser, Sues & Rundell
Post Office Box 6118
Alexandria, Louisiana 71307
(318) 445-6471
COUNSEL FOR DEFENDANTS/APPELLEES:
    Hartford Fire Ins. Co.
    Xavier Desmond Thornton
    Rent–A-Center East, Inc.

**David Charles Laborde**
**The LaBorde Law Firm**
**Post Office Box 80098**
**Lafayette, Louisiana  70598-0098**
**(337) 261-2617**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Sylvia Lemoine**
    **Walter Lemoine**

**CONERY, Judge.**

Plaintiffs Sylvia and Walter Lemoine ("Lemoines") appeal the trial court's judgment granting defendants', Xavier Desmond Thornton, Rent-A-Center East, Inc. and Hartford Fire Insurance, ("Thornton Defendants"), "Motion to Enforce Settlement and For Costs and Attorney Fees Related Thereto," and ordering "specific performance of the settlement agreement" by the Lemoines. For the following reasons, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

On April 20, 2011, Mr. John H. Smith, the original attorney for the Lemoines, filed suit on their behalf seeking survival and wrongful death damages for the death of their son, Marc Lemoine, allegedly resulting from a March 5, 2011 automobile accident. The accident occurred in Avoyelles Parish on Louisiana Highway 29 between Marc Lemoine's vehicle and a 2007 Chevrolet box truck operated by Xavier Desmond Thornton, an employee of Rent-A-Center East. Allegedly, Mr. Thornton crossed the centerline of the highway and struck Mr. Lemoine's vehicle causing injuries to and the eventual death of Marc Lemoine.

The Thornton Defendants denied both liability and causation for the accident and Marc Lemoine's subsequent death on April 3, 2011. Discovery ensued and a trial date was set for October 2, 2012. The parties jointly requested a continuance in order for the parties to participate in mediation, and the trial court agreed.

Both Sylvia and Walter Lemoine were present at the mediation conducted on January 16, 2013. The mediation did not immediately result in the settlement of the case for the final offer of $75,000 made by the Thornton Defendants. However, two days later, on January 18, 2013, Mr. Smith sent an e-mail to Mr. Edward Rundell, counsel for the Thornton Defendants, accepting on behalf of the

Lemoines the Thornton Defendants' final offer of $75,000. Mr. Smith claimed he had their authority to settle, a claim vigorously denied by the Lemoines.

In his January 18, 2013 e-mail, Mr. Smith stated, in pertinent part:

> I have Mr. and Mrs. Lemoine's authority to accept your client's last mediation offer and settle the case in its entirety as follows: Rent-A-Center and all other named and unnamed defendants, including insurers, agree to pay $75,000.00, all Clerk of Court costs and Bernie McLaughlin's total mediation fees in exchange for a full and final release and prejudicial dismissal of all claims arising out of the accident in question. I know you are busy today, but when time allows, please forward to me a draft of the receipt and release/settlement documents and Motion To Dismiss for my review and execution by Mr. and Mrs. Lemoine.

On January 30, 2013, Ms. Heather Matthews, Mr. Rundell's co-counsel, sent correspondence to Mr. Smith advising that their clients were willing to settle the Lemoines' claims for the amount of $75,000 in exchange for a complete release of all parties and without any reservation of rights. The January 30, 2013 correspondence added additional terms and outlined the defendant's settlement offer in greater detail in pertinent part as follows:

> c)    **Plaintiffs will specifically agree to be responsible for the payment and satisfaction of any and all liens, privileges, and claims for reimbursement, and plaintiffs will indemnify, defend (with counsel of the Released Parties' choice)  and hold the Released Parties and their attorneys harmless from and against any and all such claims.**

> d)   The parties agree that a more formal detailed written agreement will be executed and that a formal Judgment of Dismissal with Prejudice will be executed.

> e)    Plaintiff's acknowledge and agree that each of the terms outlined above is a material condition of this settlement waivable by the Released Parties at their option, and without which the Released Parties would not have entered into this agreement.

> f)    My clients will bear all court costs and the mediation costs related to this matter.

(Emphasis added.)

2

The January 30, 2013 correspondence continues as follows, "If you have authorization and this offer is acceptable to the plaintiffs, simply confirm by signing, dating below and returning to me."

Mr. Smith signed his name under the following statement, "I have authorization from my client to settle under the terms outlined above, and I hereby accept these terms and agree to the settlement as outlined above."

On February 8, 2013, Ms. Matthews sent correspondence to Mr. Smith and included several attachments including, a "**Sedgwick Claims Management Services, Inc**. check number 0037953835 in the amount of $75,000.00." The check was made out only to Mr. Smith's firm, SMITH & SHANKLIN, and not jointly to the Lemoines. The February 8, 2013 correspondence also included duplicate originals of the "**Receipt and Release With Indemnity Agreement,**" ("Receipt and Release") and one original of a "**Joint Motion and Order of Dismissal**" ("Order of Dismissal"). Ms. Matthews further instructed Mr. Smith as follows, "Please have your clients execute both originals of the release papers before a Notary Public and two witnesses, add your approval and return **one** of the executed copies of the Receipt and Release to me."

In closing, Ms. Matthews stated, "Lastly, I am tendering the enclosed draft to you in trust with the understanding that you will not negotiate same, without first returning to me the properly executed Receipt and Release and Joint Motion and Order of Dismissal."

Upon receipt of the February 8, 2013 correspondence and attached documents from Ms. Matthews, Mr. Smith claimed he **mailed** the settlement documents from his office in Baton Rouge, Louisiana to the Lemoines in Marksville, Louisiana.

In the interim, on February 14, 2013, Mr. Smith, contrary to the instructions contained in the February 8, 2013 correspondence and without receiving and returning the requested Receipt and Release and Order of Dismissal, deposited the $75,000 settlement check into the SMITH SHANKLIN LLC'S bank account at Midsouth Bank, N.A. On March 7, 2013, counsel for the Thornton Defendants contacted Mr. Smith's office by telephone to request the signed settlement documents and was informed that Mr. Smith had not received the executed documents from the Lemoines in Marksville, Louisiana.

In a March 15, 2013 e-mail response to Mr. Rundell, Mr. Smith discussed a telephone conversation initiated by Mrs. Lemoine after she received the settlement documents questioning the settlement and asking if she had signed any prior settlement documents. Mr. Smith stated, "I reminded her that we did not settle at the mediation, but she gave me the authority to settle the case several days later." The e-mail does not indicate if the phone conversation he allegedly had with Mrs. Lemoine occurred before or after the settlement check of $75,000 was negotiated by Mr. Smith.

Mr. Smith's March 15, 2013 e-mail to Mr. Rundell further stated that Mr. Smith said he received another call from Mrs. Lemoine advising that other attorneys felt the family should have received more money in the settlement. In the e-mail, Mr. Smith claims he had been contacted by Mr. David C. Laborde, a Lafayette attorney, who allegedly advised Mr. Smith that he was scheduled to meet on March 8, 2013 with the Lemoines' surviving son and estate administrator, Mr. Donald Lemoine. Mr. Smith claimed that Mr. Laborde indicated he would apprise Mr. Smith of the status of the case after the meeting, but failed to do so.

4

Based on the March 15, 2013 e-mail from Mr. Smith, the Thornton Defendants filed their Motion on April 1, 2013, seeking to enforce the settlement by requesting "specific performance in the form of execution of the Receipt and Release and Order of Dismissal" and also requesting costs and attorney fees. The trial court originally fixed the hearing for April 22, 2013. On April 16, 2013, Mr. Smith withdrew from the case and Mr. Laborde formally enrolled as counsel of record for the Lemoines. The April 22, 2013 hearing was continued and re-scheduled for May 13, 2013.

At the May 13, 2013 hearing, the trial court indicated to counsel, who now included new counsel for the Lemoines, Mr. Laborde, that "all of my training says it's a valid settlement when a lawyer says I have the authority to settle."

Mr. Laborde, specifically indicated to the court that he had not anticipated and thus had not addressed in his briefing the issue of "whether or not the Lemoines . . . agreed . . . communicated to Mr. Smith that those were their wishes," thus giving Mr. Smith the specific authority to settle the case. Although the Lemoines were present at the hearing, Mr. Laborde determined that their testimony on the issue of whether specific authority to settle the case had been granted to Mr. Smith would not be "pertinent." Instead, Mr. Laborde focused his argument on the documents exchanged between prior counsel and the Thornton defendants and "whether or not the exchange of correspondence between the parties, or between the attorneys is sufficient enough to constitute a settlement."

The trial court then took the matter under advisement. Prior to the court's ruling, the Lemoines submitted a Post-Trial Memorandum In Support of Opposition to Enforce Settlement Agreement. Attached to the memorandum was an affidavit executed by Mrs. Sylvia Lemoine, which was undated and indicated

5

the year 2012, which would have been prior to the time period at issue and an obvious typographical error. In her affidavit, Mrs. Sylvia Lemoine denies ever giving Mr. Smith the specific authority to settle the case after the case failed to settle at the mediation. The affidavit, though in the trial court record as an attachment to the Lemoines' post-hearing brief, was not properly filed in evidence at the hearing, as it was sent to the trial court after the hearing. There is no indication in the trial court record that the trial court ever admitted the affidavit "in evidence" as part of the Lemoines' opposition. Nor was an objection or Motion to Strike the affidavit filed, however. There is no other evidence in the record before us which reflects whether Mr. or Mrs. Lemoine gave specific authority to Mr. Smith to settle on the terms provided by Mr. Rundell.

The trial court issued its written Reasons for Ruling on May 24, 2013, finding in favor of the Thornton Defendants and ordering the Lemoines to "specifically perform as per the settlement agreement" or risk the imposition of attorney fees. The Lemoines were also cast with costs for the Thornton Defendants Motion. A Judgment reflecting the trial court's ruling was also issued on May 24, 2013, from which the Lemoines timely appealed.

## ASSIGNMENT OF ERROR

The Lemoines assign the following as an error, "The District Court Erred in holding that an exchange of emails and correspondence between lawyers, without the signature of the parties constitutes a settlement a (sic) compromise."

## LAW AND DISCUSSION

### Standard of Review

The proper standard of review is whether the trial court committed an error of law or made a factual finding that was manifestly erroneous or clearly wrong.

6

*Gibson v. State*, 99-1730 (La. 4/11/00), 758 So.2d 782, *cert. denied*, 531 U.S. 1052, 121 S.Ct. 656 (2000). The supreme court's two part test for appellate review of a factual finding requires: "1) The appellate court must find from the record that there is a reasonable factual basis for the finding of the trial court, and 2) The appellate court must further determine that the record establishes that the finding is not clearly wrong (manifestly erroneous)." *Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987). The reviewing court must review the record in its entirety to make this determination. *Stobart v. State, DOTD*, 617 So.2d 880, 882 (La.1993).

However, statutory interpretations are a question of law. *Shell v. Wal-Mart Stores, Inc.*, 00-997 (La.App. 3 Cir. 3/21/01), 782 So.2d 1155, *writ denied*, 01-1149 (La. 6/15/01), 793 So.2d 1244. Although a reviewing court defers to a trial court's reasonable decision on a question or matter properly within the trial court's discretion, if the trial court's decision is based on an erroneous interpretation or application of the law, such an incorrect decision is not entitled to deference. *Kem Search, Inc. v. Sheffield*, 434 So.2d 1067 (La.1983).

The law applicable to a motion to enforce a settlement begins with La.Civ.Code art. 3071 which provides, "A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." Louisiana Civil Code Article 3072 requires that, "A compromise shall be made in writing or recited in open court, in which case the recitation shall be susceptible of being transcribed from the record of the proceedings."

Using summary proceedings, the trial court found a compromise existed pursuant to La.Civ.Code art. 3072 based on the January 18, 2013 e-mail from Mr. Smith, and the January 30, 2013 correspondence from defense counsel, Ms.

Matthews, both of which contained Mr. Smith's confirmation that he had the necessary authorization from his clients to settle their claims. The trial court stated, "The documents referred to above clearly consist of writings that reflect a compromise. Therefore, by simple application of Article 3072 a valid compromise and settlement has been entered."

The trial court was correct that the two documents referenced *could* constitute a valid compromise of the Lemoines' claims. The Louisiana Supreme Court in *Felder v. Georgia Pac. Corp.*, 405 So.2d 521, 524 (La.1981) held "where two instruments, when read together, outline the obligations each party has to the other and evidence each party's acquiescence in the agreement," the writing requirements are met.

"In order to be enforceable under Article 3071,[1] a compromise either must be reduced to writing and signed by the parties or their agents, or must be recited in open court and be capable of transcription from the record of the proceeding." *Lavan v. Nowell,* 98-284, p. 2 (La. 4/24/98), 708 So.2d 1052, 1052 (footnote omitted). *See also Sullivan v. Sullivan,* 95-2122 (La. 4/8/96), 671 So.2d 315.

The "compromise" was not recited in open court. The basis for the trial court's decision was that Mr. Smith, as *agent* for the Lemoines, signed a compromise agreement in writing in this case.

However, such a compromise is valid only if the parties share a meeting of the minds as to their intent. *American Bank & Trust Co. v. Hannie,* 568 So.2d 216 (La.App. 3 Cir. 1990), *writ denied,* 572 So.2d 64 (La.1991). *See also Wortham v. Fielder,* 30-102 (La.App. 2 Cir. 4/8/98), 711 So.2d 399, *writ denied,* 98-1254 (La.

---

[1] Louisiana Civil Code Article 3072 now includes the writing requirement previously contained in Article 3071.

6/19/98), 721 So.2d 474.

Louisiana Civil Code Article 2997 provides, in pertinent part, "Authority also must be given *expressly* to: (5) Enter into a compromise or refer a matter to arbitration." (Emphasis added.) The signature of a party's attorney alone is not sufficient to affect a compromise unless the required authorization is expressly given as provided under La.Civ.Code art. 2997. *Bennett v. Great Alt. & Pac. Tea Co., Inc.*, 95-410 (La.App. 1 Cir. 11/9/95), 665 So.2d 84, *writ denied*, 95-2981, (La. 2/9/96), 667 So.2d 536. "The law is quite clear in our jurisprudence that a party's counsel of record does not have authority to settle a client's claim without his client's 'clear and express consent.'" *Hayes v. Rollins*, 435 So.2d 1151, 1152 (La.App. 3 Cir. 1983). "The general authority granted to an attorney in an attorney/client contract of employment 'to settle' the client's case constitutes only authority to negotiate a settlement." *Bennett*, 665 So.2d at 86.

In making its determination that Mr. Smith had obtained the necessary express consent of the Lemoines to settle the case, the trial court found in its reasons for ruling, "Louisiana Law is quite clear that there is no requirement in the law or jurisprudence that the express consent necessary to authorize an attorney to enter into a compromise must be written. This Court could find no such authority." The trial court then concluded that, "Legal authority states there must be "clear and express consent" and clearly plaintiff's counsel was of the firm opinion that he did have clear and express consent to agree to the terms of the settlement. This firm belief continued after the dispute arose."

Having made the determination, based on the two documents exchanged between counsel and the statements of Mr. Smith contained therein indicating his authority to settle the case on behalf of his clients, the trial court found that Mr.

Smith, as the Lemoines' "representative" accepted the terms of the settlement as contained in the January 30, 2013 correspondence. The trial court further remarked "that Mrs. Lemoine basically changed her mind after having been allegedly advised by several attorneys that she should have received a lot more money in settlement." There is no testimony in the record to support such a statement. Indeed, no one was sworn and testified at the hearing at all. The trial court was obviously repeating remarks made by Mr. Smith in an e-mail post settlement to Mr. Rundell.

The trial court then distinguished the cases where the attorney in question did not have the necessary "clear and express consent" of his clients to settle the case. The trial court indicated the outcome would be different if Mr. Smith had acknowledged he did not have the necessary express authority or was unsure if he had "express permission to agree to the terms of the settlement. However, prior counsel is adamant that he had plaintiff's permission to agree to the settlement."

Again, there was no testimony in the record to support the trial court's statement. Counsel for the Lemoines chose not to present their testimony to the court on this key issue, and determined their testimony was not "pertinent" to the issue as framed by the trial court. Mrs. Lemoine's affidavit, though not properly admitted in evidence, is in the record, and directly contradicts Mr. Smith's claim of specific authority to settle. Indeed, testimony of the attorney witness and the Lemoines on the key issue of specific authority to settle is crucial to a decision in this case. There must be specific and express authority to settle and a "meeting of the minds" on the terms and conditions of the settlement. *Wortham*, 711 So.2d 399; *Bennett*, 665 So.2d 84; *American Bank*, 568 S o.2d 216; *Hayes*, 435 So.2d 1151.

*Meeting of the Minds*

In the third circuit case of *Soileau v. Allstate Ins. Co.*, 03-120 (La.App. 3 Cir. 10/15/03), 857 So.2d 1264, *writ denied,* 03-3170 (La. 2/6/04), 865 So.2d 724,  a panel of this court found there was no "meeting of the minds" and affirmed the trial court's ruling refusing to enforce a settlement agreement between counsel. The *Soileau* court found that the terms outlined in the correspondence between counsel were confusing. In the initial correspondence offering to settle the case, Mr. Soileau's counsel offered to settle his client's claim against both "Allstate and the insured, but later stated that his client "will release the insured," with no mention of Allstate. *Soileau*, 857 So.2d at 1267.

The *Soileau* court also discussed the burden of the party opposing the compromise as follows:

> Compromises are favored in the law and the burden of proving the invalidity of such an agreement is on the party attacking it. *Bridges v. State, DOTD,* 32,018 (La.App. 2 Cir. 6/16/99), 738 So.2d 1149. Furthermore, "[C]ourts will not declare a settlement void without a clear showing that it violates good morals or public interest. Compromise settlements are not invalidated lightly in absence of bad faith, error or fraud." *Middlebrooks v. Int'l Indem.,* 95–1364, p. 7 (La.App. 3 Cir. 3/6/96), 670 So.2d 740, 744 (*quoting Herrington v. Skinner,* 93–1556, p. 4 (La.App. 3 Cir. 6/1/94), 640 So.2d 748, 751).

*Soileau*, 857 So.2d at 1267.

Despite the heavy burden placed on the Lemoines in challenging the settlement agreement, we find the trial court committed manifest error in ordering specific performance to enforce the "settlement" and finding that a valid compromise was perfected by agreement of counsel based only on an e-mail and subsequent correspondence between the Lemoines' counsel and counsel for the Thornton Defendants.  The record as constituted contains no testimony from which a crucial credibility determination can be made as to whether the Lemoines gave

11

specific authority to Mr. Smith to settle their claims.

The record is clear that Mr. Smith never met personally with the Lemoines to discuss the specific terms of the settlement, but forwarded the documents by mail to the Lemoines. Considering the amount of the settlement, $75,000, there would appear to be a need to explain the settlement, especially with respect to the possible amount of any outstanding liens which might have to be satisfied out of the settlement funds It would be difficult if not impossible for the Lemoines, who both were in their eighties, without further explanation, to understand the ramifications of indemnifying the Thornton Defendants or to determine the amount of the settlement proceeds necessary to satisfy the outstanding Medicare/Medicaid liens.

In *Amy v. Schlumberger Tech. Corp.*, 00-175, p.5 (La.App. 3 Cir. 6/14/00), 771 So.2d 669, 672, a panel of this circuit found that although counsel may have thought a settlement had been reached, there was "no meeting of the minds" when "the plaintiff refused to accept the written release language offered by Schlumberger." The argument before the trial court at the hearing indicated "that each party envisioned something different with regard to the release Schlumberger would obtain in exchange for the sum agreed upon[.]" *Id*.

The transcript of the summary proceeding in this case contains a colloquy between counsel and the court as to the amount of the outstanding medical liens, with counsel for the Lemoines seeking a stipulation that $463,000 is the amount of the outstanding medical liens and counsel for the Thornton Defendants seeking a stipulation that $60,000 is the amount of the outstanding medical lien, due to the Medicare reduction. As in *Schlumberger*, "argument of counsel at the hearing only

points to the different understanding of the two parties as to what the settlement entailed." *Schlumberger*, 771 So.2d at 672.

The record is also devoid of any information that Mr. Smith explained to the Lemoines the amount that would be required to satisfy the lien and his fee and expenses. The check in the amount of $75,000 did not include the names of Sylvia and Walter Lemoine, and was only made out to Mr. Smith's firm, Smith & Shankin. It is not clear whether the $75,000 check was negotiated by Mr. Smith in violation of the February 8, 2013 instructions from defense counsel, which requested the check be held by Mr. Smith in trust until after the Receipt and Release had been reviewed by him and signed by the Lemoines. It is not clear whether the check was deposited in the Smith & Shankin Trust Account on February 14, 2013. Regardless, it is undisputed that the check issued by the Thornton Defendants was not "endorsed and negotiated" by the Lemoines, and thus, it cannot serve as a written compromise of their claim. *Doiron v. Louisiana Farm Bureau Mutual Ins. Co.*, 98-2818 (La.App. 1 Cir. 2/18/00), 753 So.2d 357, 361.

Based on the record before us, we find there was an absence of a meeting of the minds between the parties. The terms of the settlement concerning the specific amount of the medical expenses and the Lemoines' obligation to indemnify the Thornton Defendants is still disputed between the parties. The dispute as to the medical lien is evident based on the colloquy between counsel at the May 13, 2013 hearing and their refusal to stipulate to the specific amount to be paid out of the settlement for Marc Lemoine's medical expenses.

There is no evidence in the record that Mr. Smith explained the terms of the settlement to his clients, which included the indemnity provisions as discussed

above. The implications of former counsel's failure to fully explain the possible settlement and his negotiation of the settlement check prior to the Lemoines' execution of the settlement documents raises serious questions and does not support the trial court's conclusion that Mr. Smith did have the specific authority to settle the claims of the Lemoines.

## DISPOSITION

For all of the forgoing reasons, the May 24, 2013 judgment of the trial court granting defendants' Xavier Desmond Thornton, Rent-A-Center East, Inc. and Hartford Fire Insurance, Motion to Enforce Settlement Agreement and for Costs and Attorney Fees is reversed, and the matter is remanded to the trial court for further proceedings consistent herewith. Costs of this appeal are assessed to Xavier Desmond Thornton, Rent-A-Center East, Inc. and Hartford Fire Insurance.

**REVERSED AND REMANDED.**