STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2023 CA 0226

L. KEVIN COLEMAN

VERSUS

STATE FARM FIRE AND CASUALTY COMPANY

Judgment Rendered: __OCT 1 1 2023__

* * * * *

On Appeal from the
22nd Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Trial Court No. 2022-10502

Honorable Richard A. Swartz, Judge Presiding

* * * * *

CHH

PMc
by CHH

| | |
|---|---|
| L. Kevin Coleman<br>Mandeville, LA | Plaintiff-Appellant,<br>*Pro Se* |
| Jeffrey E. Richardson<br>David A. Strauss<br>Jacques P. Jandrieu<br>New Orleans, LA | Attorneys for Defendant-Appellee,<br>State Farm Fire and Casualty<br>Company |

* * * * *

BEFORE: McCLENDON, HESTER, AND MILLER, JJ.

J. Miller concurs w/ reasons

**HESTER, J.**

In this appeal involving the interpretation of an insurance contract, plaintiff, L. Kevin Coleman, appeals a judgment denying his motion for summary judgment and granting a motion for summary judgment in favor of defendant, State Farm Fire and Casualty Company on the grounds that Coleman's damages did not exceed the applicable hurricane deductible. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On August 29, 2021, Hurricane Ida made landfall in South Louisiana causing damage to Coleman's residence premises located at 111 Chinchuba Gardens Drive in Mandeville, Louisiana. At all relevant times, Coleman's home was covered by a homeowner's insurance policy issued to Coleman by State Farm. On September 16, 2021, Coleman reported a claim outlining his damages to State Farm, including damage from trees that fell on his fences, driveway, and a wooden pier in the back of his property.

Thereafter, State Farm inspected the property and, in its estimate, concluded that the damages incurred by Coleman totaled $5,578.13[1], and did not exceed the $12,160.00[2] hurricane deductible in the policy. As part of its estimate, State Farm determined $500.60 as the cost for the removal of tree debris. Coleman responded by letter rejecting the estimate presented by State Farm. He attached to the letter an estimate from Ziegler Tree and Timber Co. estimating that the removal for all the fallen trees and stumps from Coleman's property would cost $32,500.00. State Farm replied, pointing to Section I - Additional Coverages in the policy, contending that regardless of which estimate for tree debris removal was used, the policy provided a

---

[1] State Farm's estimate concluded that the value of the damaged part of Coleman's property at the time of the loss, calculated as the estimated cost to repair or replace such property less a deduction to account for pre-loss depreciation, was $3,477.78 for the pier, $417.46 for the fence, $856.30 for tree removal, $500.60 for removal of tree debris, $141.26 for hauling away debris in a pickup truck (including dump fees), and $184.73 for concrete labor, for a total of $5,578.13.

[2] $12,160.00 is 5% of the Coverage A policy limit.

2

$1,000.00 limit for the removal of tree debris and stumps, and even if State Farm acknowledged that Coleman met the $1,000.00 limit, the coverage would not exceed the policy's hurricane deductible.

In response, Coleman filed a "Petition for Declaratory Judgment, Damages, Statutory Penalties and Attorney Fees" seeking a judgment declaring that "debris" as used in the policy includes trees and any parts thereof. Coleman also sought damages due under the policy, statutory penalties pursuant to La. R.S. 22:1892, and attorney fees. The district court, in accordance with Act 318, issued a case management order directing that all Hurricane Ida related claims to be submitted for mediation before a specially appointed master. On June 2, 2022, Coleman filed a "Motion for Summary Judgment for Part of the Relief Prayed for" stating that while the case is pending and subject to the case management order, the present motion will greatly assist in streamlining the process set forth in the order. In his motion, Coleman sought summary judgment declaring that:

A. "debris" as used in provision 1, entitled "Debris Removal" under "Section I – Additional Coverages (the "debris clause") of the policy includes trees and any parts thereof and that same are not otherwise excluded as "debris;"
B. when a tree is "debris" of damaged covered property the policy requires that the entire felled tree be removed and properly disposed of, and not just a selected piece thereof,
C. provision 1(b) of the debris clause which begins "We will also pay…" is not a limitation upon the amount of [money] recoverable under the debris clause but is instead an addition thereto;
D. no other policy provision limits the amount available under the debris clause to pay for the removal of debris of covered property; and
E. defendant's failure and/or refusal to pay for debris removal was arbitrary and capricious.

State Farm opposed Coleman's motion for summary judgment and filed "State Farm's Cross-Motion for Partial Summary Judgment," contending that Coleman's damages do not exceed the hurricane deductible in the policy. In so arguing, State Farm contends that the policy contains a $1,000.00 limit for the removal of tree debris and stumps.

3

The parties' motions for summary judgment came were heard on September 15, 2022. Thereafter, the district court issued written reasons for judgment and signed a judgment on November 22, 2022, denying Coleman's motion for summary judgment, granting State Farm's motion for summary judgment, and dismissing Coleman's petition with prejudice. It is from this judgment that Coleman appeals, contending that the district court erred in failing to interpret the policy broadly in favor of coverage and in failing to find provision (1)(b) was an addition to coverage, not a limitation. Coleman further contends that the district court erred in failing to find State Farm's failure to pay for the tree debris removal was arbitrary and capricious in violation of La. R.S. 22:1892.

## STANDARD OF REVIEW

A motion for summary judgment shall be granted only if the motion, memorandum, and supporting documents admitted for purposes of the motion show there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. See La. Code Civ. P. art. 966(A)(3). In determining whether summary judgment is appropriate, appellate courts review evidence *de novo* under the same criteria that govern the district court's determination. See **Huggins v. Amtrust Ins. Co. of Kansas, Inc.**, 2020-0516 (La. App. 1st Cir. 12/30/20), 319 So.3d 362, 366. We may only consider evidence that is admissible under the express provisions of La. Code Civ. P. arts. 966 & 967. **Huggins**, 319 So.3d at 365. Summary judgment is appropriate for determining issues relating to insurance coverage, which is a question of law. See La. Code Civ. P. art. 966(E). See also **Bosse v. Access Home Insurance Company**, 2018-0482 (La. App. 1st Cir. 12/17/18), 267 So.3d 1142, 1145, and **Doiron v. Louisiana Farm Bureau Mut. Insurance Company**, 98-2818 (La. App. 1st Cir. 2/18/00), 753 So.2d 357, 362 n.2. Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy under which

4

coverage could be afforded. **Reynolds v. Select Properties, Ltd.**, 93-1480 (La. 4/11/94), 634 So.2d 1180, 1183.

## LAW AND ANALYSIS

An insurance policy is a contract between the parties and is subject to the basic rules of contract interpretation found in La. Civ. Code arts. 2045, *et seq.* Interpretation of a contract is the determination of the parties' common intent, as reflected by the policy's wording, and it is the parties' intent that determines the extent of coverage. La. Civ. Code art. 2045; **Bosse**, 267 So.3d at 1146. When the policy's wording is clear, no further interpretation may be made in search of the parties' intent, and the policy must be enforced as written. La. Civ. Code art. 2046; **Bosse**, 267 So.3d at 1145-46. If, after applying the other general rules of construction, an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer who issued the policy and in favor of coverage for the insured. See La. Civ. Code art. 2056. Under this rule of "strict construction," equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. For the rule of strict construction to apply, the policy must be susceptible to two or more interpretations, and the alternative interpretations must be reasonable. **Bonin v. Westport Insurance Corporation**, 2005-0886 (La. 5/17/06), 930 So.2d 906, 911. The determination of whether a contract is clear or ambiguous is a question of law. **McMath Construction Company, Inc. v. Dupuy**, 2003-1413 (La. App. 1st Cir. 11/17/04), 897 So.2d 677, 681, writ denied, 2004-3085 (La. 2/18/05), 896 So.2d 40. An insurance contract must be construed according to the entirety of its terms and conditions as set forth in the policy and as modified by any endorsement made a part of the policy. La. R.S. 22:881. An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. **Pecoraro v. Louisiana Citizens Insurance**

5

**Corporation,** 2018-161 (La. App. 5th Cir. 10/17/18), 258 So.3d 212, 215. Absent a conflict with statutory provisions or public policy, insurers are entitled to limit their liability and to impose reasonable conditions upon the obligations they contractually assume. **Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Co.,** 93-0911 (La. 1/14/94), 630 So.2d 759, 763.

The sole issue herein is the interpretation of the insurance policy to determine to what extent the policy covers expenses incurred for the removal of tree debris. Section I of the policy is titled "Property Coverages" and within Section I there are three main types of coverage: Coverage A addresses "DWELLING," Coverage B addresses "PERSONAL PROPERTY," and Coverage C addresses "LOSS OF USE." In addition to Coverages A, B, and C, Section I also provides for additional coverages related to the insured's own property. The relevant provision regarding debris removal is contained in the Section I- Additional Coverages section of the policy and provides:

1. **Debris Removal.** *We* will pay the reasonable expenses you incur in the removal of debris of covered property damaged by a *loss insured.* This expense is included in the limit applying to the damaged property. The following coverages and limits also apply:

   a. When the amount payable for the property damage plus the debris removal exceeds the limit for damaged property, an additional 5% of that limit is available for debris removal expense. This additional amount of insurance does not apply to **SECTION I – ADDITIONAL COVERAGES, Trees, Shrubs, and Landscaping.**[3]

---

[3] The section under Additional Coverages for Trees, Shrubs, and Landscaping provides coverage for specific perils not associated with this specific claim, i.e., trees felled by a windstorm. This section provides:

**Trees, Shrubs, and Landscaping.** *We* will pay for accidental direct physical loss to outdoor:

   a. trees, shrubs, live or artificial plants, and lawns;
   b. artificial grass, and
   c. hardscape property used for aesthetic purposes not permanently affixed to realty;
      on the *residence premises,* caused by the following perils: **Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles...Vandalism or malicious mischief,** or **Theft.**

The limit for this coverage, including the removal of debris, will not exceed 5% of the amount shown in the *Declarations* for **COVERAGE A- DWELLING.** *We* will not pay more than $750 for any one outdoor tree, shrub, plant, or hardscape item,

6

b. *We* will also pay up to $1,000 total for each loss to cover the reasonable expenses **you** incur in the removal of tree debris and stumps from the *residence premises*, unless otherwise excluded. This coverage applies when:

(1) the tree has caused a *loss insured* to Coverage A property; or

(2) the tree debris felled by windstorm, hail, or weight of snow or ice blocks:

(a) the driveway, on the *residence premises*, and prevents land *motor vehicle* access to or from the *dwelling*; or

(b) a ramp designed to assist persons with disabilities, on the *residence premises*, and prevents access to or from a *building structure*.

Coleman argues that State Farm made a judicial admission that a fallen tree is a type of debris covered by Section I, and the district court erred in its conclusion that "the debris itself must be comprised of covered property. In this case[,] the trees were not covered property damaged by a loss insured." In the alternative, Coleman argues that subsection 1(b) was ambiguous *per se* and should have been interpreted in his favor as the plaintiff/policy holder. Specifically, Coleman contends that 1(b) cannot be interpreted to create a specific limitation for a specific type of debris removal and is instead an addition thereto as the subsection begins with "*We will also pay.*"

An "ambiguity" in an insurance policy is said to exist when the pertinent provision can be reasonably construed in two different ways. **McCarthy v. Berman**, 95-1456 (La. 2/28/96), 668 So.2d 721, 726. Our review of the policy reveals no ambiguity. While the policy provides coverage for expenses related to the removal of tree debris, it is subject to specific conditions and limitations, and the maximum amount of coverage for each loss is $1,000.00. Under the introductory paragraph in the Additional Coverages section of the policy titled "Debris Removal" the policy states that "[t]he following coverages and **limits** also apply." (Emphasis

---

including debris removal expense. This coverage may increase the limit otherwise applicable. *We* will not pay for any loss to property grown for *business* purposes.

7

added). Subsection 1(b) directly addresses the scope of coverage for the removal of tree debris and stumps and provides coverage **up to $1,000.00 total** for each loss to cover the reasonable expenses incurred in the removal of tree debris and stumps from the residence premises. The policy then gives the two circumstances[4] when it covers the removal of tree debris, but limits the coverage to $1,000.00 regardless of which circumstance occurs. Furthermore, the declarations page of the policy lists a liability limit of $1,000.00 for tree debris removal.

It is well established that, in contract interpretation, the more specific provision controls the general. **Aikman v. Thomas**, 2003-2241 (La. App. 1st Cir. 9/17/04), 887 So.2d 86, 90. The tree debris removal provision falls within the broader paragraph dealing with general debris removal. Subsection 1(b) then provides a specific provision for a specific type of debris removal, namely tree debris and stumps. "We will also pay" refers to an additional payment beyond the amount paid for debris removal that does not consist of trees and stumps. As the coverage for the removal of tree debris and stumps is unambiguously limited to $1,000.00, there is no reasonable interpretation of the policy under which coverage could be afforded beyond $1,000.00 for the removal of tree debris and stumps.[5] Additionally, because the policy limits the coverage of tree removal to $1,000.00, regardless of which estimate is used by State Farm, Coleman's recoverable damages do not exceed the applicable hurricane deductible. Therefore, we find no error in the district court's grant of summary judgment dismissing Coleman's claims.

---

[4] The two circumstances are: 1. the tree has caused a loss insured to Coverage A property or 2. the tree felled by windstorm, hail or weight of snow or ice blocks the driveway or a ramp designated to assist persons with a disability access to a building.

[5] Considering our conclusion that the policy unambiguously limits the coverage for the removal of tree debris to $1,000.00, we pretermit discussion of Coleman's judicial admission argument and find no merit to Coleman's second assignment of error contending that State Farm was arbitrary and capricious in its failure to pay for the tree debris removal.

## CONCLUSION

For the foregoing reasons, the November 22, 2022 judgment of the district court is affirmed. All costs of the appeal are assessed to plaintiff-appellant, L. Kevin Coleman.

**AFFIRMED.**

| L. KEVIN COLEMAN | STATE OF LOUISIANA |
| --- | --- |
| VERSUS | COURT OF APPEAL |
| | FIRST CIRCUIT |
| STATE FARM FIRE AND CASUALTY COMPANY | NUMBER 2023 CA 0226 |

**MILLER, J., concurring.**

While I agree with the majority's interpretation of the policy – that the removal of tree debris and stumps is capped at $1,000.00 for each loss – I write separately to emphasize that Mr. Coleman failed to attach competent summary judgment evidence to genuinely place at issue the amount of covered damages. State Farm values the claim at $5,578.13 as evidenced by its repair estimate. This amount is well below the hurricane deductible of $12,160.00. Because Mr. Coleman failed to set forth any evidence countering this amount, either in support of his own motion or in opposition to State Farm's motion for summary judgment, we are unable to conclude that the deductible has been met and payment is due under the policy.